# United States District Court
# Central District of California

| | |
|---|---|
| PINI USA, INC.; PINI POLSKA SP. Z.O.O., <br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>NB GLOBAL COMMODITIES, LLC,<br><br>　　　　　Defendant. | Case № 2:17-CV-04763-ODW-PLA<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S FIRST AMENDED COUNTERCLAIM [29]** |

## I. INTRODUCTION

Before the Court is Plaintiffs and Counter-Defendants Pini USA, Inc. and Pini Polska SP. Z.o.o.'s (collectively "Pini") Motion to Dismiss Defendant and Counter-Claimant NB Global Commodities, LLC's ("NB Global") First Amended Counterclaim. (Mot., ECF No. 29.) NB Global opposed Pini's Motion on October 2, 2017. (Opp'n, ECF No. 30.) On October 6, 2017, Pini replied. (Reply, ECF No. 33.)[1] For the following reasons, the Court **GRANTS** Pini's Motion.

## II. BACKGROUND

This action stems from an ongoing relationship whereby Pini agreed to prepare and sell, and NB Global agreed to buy, various pork products. On June 28, 2017, Pini

---

[1] After considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

filed its Complaint alleging that NB Global breached a number of the parties' contracts, in the form of purchase orders, when NB Global failed pay for certain goods that NB Global accepted or wrongfully rejected. (Compl., ECF No. 1.) On August 10, 2017, NB Global answered Pini's Complaint and filed a Counterclaim against Pini. (ECF Nos. 21, 22.) On September 9, 2017, NB Global filed its First Amended Counterclaim, alleging causes of action for breach of contract, breach of covenant of good faith and fair dealing, breach of implied warranty of merchantability, breach of implied warranty of fitness for particular purpose, and unfair business practices under California Business & Professions Code § 17200, et seq. (First Am. Countercl. ("FAC"), ECF No. 28.)

In the FAC, NB Global alleges the following facts, which the Court takes as true and construes in the light most favorable to NB Global. *See, e.g., Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 704 (9th Cir. 2016) (restating the generally-accepted principle that "[o]rdinarily, when we review a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we accept [counterclaimant's] allegations as true and construe them in the light most favorable to the [counterclaimant]") (internal quotation marks and citation omitted).

Beginning in August 2015, NB Global and Pini entered into a series of purchase orders, whereby NB Global ordered various fresh, non-GMO, hormone- and antibiotic-free pork products, including bacon, pork chops, salami, and sancocho (fried pork skins), that were to be produced in, and imported from, Poland. (FAC ¶¶ 7, 17.) Pini was required "to produce, ship, and deliver the pork products in a timely manner and up to specification."[2] (*Id.* ¶ 9.) NB Global alleges that it had an agreement with a national discount store chain to distribute the pork products it ordered from Pini. (*Id.* ¶ 8.)

---

[2] As explained further below, NB Global does not allege from what contract, if any, many of these duties arise.

NB Global placed its first order with Pini in August 2015 (the "August 2015 Order").³ (*Id.* ¶ 10.) Pini failed to ship the product until "mid-2016," making NB Global unable to distribute the product to its customer until September 2016. (*Id.* ¶ 12.)

In June 2016, NB Global ordered bacon and pork chops from Pini (the "June 2016 Order").⁴ (*Id.* ¶ 13.) Pini delivered some of the June 2016 Order late. (*Id.* ¶ 14.) For some of the products ordered, Pini delivered "mislabeled or un-labeled bacon containers" that did not comply with USDA standards. (*Id.* ¶ 15.) Pini shipped pork chops for purchase order #12134529 that contained xanthan gum. The presence of xanthan gum prevented NB Global from distributing the pork chops because NB Global would have been required to label them as "Pork Chop with Water-Binding Product." (*Id.* ¶ 16.) NB Global also alleges that some of Pini's pork chops tested positive for listeria. (*Id.*)

In August 2016, NB Global placed additional orders for fried pork skins, also known as sancocho (the "August 2016 Order").⁵ (*Id.* ¶ 17.) Pini failed to notify NB Global when the sancocho shipped, causing the product to remain at ports in Houston and Los Angeles at extra cost to NB Global. (*Id.* ¶ 19.) When NB Global received

---

³ It is not clear whether NB Global is alleging that the August 2015 Order was for just bacon or for bacon *and* pork chops. NB Global first states that the order was for 90,000 units of 4.5 oz. of smoked bacon. (FAC ¶ 10.) In the next paragraph, NB Global states that "[Pini] breached the purchase order by failing to produce, ship, and deliver in a timely manner the smoked bacon *and pork chops*. (*Id.* ¶ 11 (emphasis added).) Then, in the next paragraph, NB Global complains of late delivery of that order, but only as to bacon. (*Id.* ¶ 12 ("The bacon was not shipped until mid-2016 . . .").) Also, unlike the other orders referenced in the FAC, NB Global does not allege a specific purchase order number for the August 2015 Order. As explained below, this is only one of the many problems with NB Global's FAC.
⁴ NB Global lists the following purchase order numbers in the FAC as those memorializing the June 2016 Order of bacon and pork chops: 12134529, 12134800, 112134801, 1213802, 1213803, 1213804, 1213805, 1213806, 1213807, 1213810, 1213811, 1213812, 1213813, and 1213814. (*Id.* ¶ 13.)
⁵ NB Global alleges that the following purchase numbers make up the August 2016 Order: 12134681, 12134682, and 12134683. (*Id.* ¶ 17.)

the sancocho, it was not up to NB Global's "specifications" because some of the sancocho did not contain fat and the shipment was not uniform in size. (*Id.* ¶ 20.)

NB Global placed another order in November 2016 for salami and pepperoni (the "November 2016 Order").[6] (*Id.* ¶ 21.) The terms of the November 2016 Order "required [Pini] to use the correct ingredients for food coloring." (*Id.* ¶ 22.) Instead of using the "correct" ingredient, Pini used paprika powder that caused the coloring of the food to fade after a few weeks. (*Id.* ¶ 23.)

Pini argues in its Motion to Dismiss that the FAC is deficient because NB Global does not allege that it notified Pini of any defects in the products, a prerequisite for NB Global's breach of contract claim. Pini also asserts that the FAC fails to state a claim as to any of NB Global's five causes of action. The Court addresses each of Pini's arguments, in turn, below.

### III. LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the

---

[6] NB Global alleges that the November 2016 Order was memorialized in purchase orders 12134808 and 12134809. (*Id.* ¶ 21.)

pleadings and must construe all "factual allegations set forth in the complaint ... as true and ... in the light most favorable" to the plaintiff. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## IV. DISCUSSION

### A. Pini's Request for Judicial Notice

Pini requests that the Court take judicial notice of the nineteen purchase orders referenced by number in the FAC.[7] (Req. for Judicial Notice Exs. 1–19, ECF No. 29-2.) NB Global objects on the grounds that Pini has not laid the foundation or established the authenticity for the purchase orders. (Objection to Req. for Judicial Notice, ECF No. 30-1.) NB Global, however, does not argue that the purchase orders attached to Pini's Request are not, in fact, the purchase orders at issue in this case. Instead, NB Global argues that the Court should not consider the purchase orders and the underlying facts contained therein because they are "subject to dispute and are not authenticated." (Opp'n 8, ECF No. 8.)

Generally, when ruling on a Rule 12(b)(6) motion to dismiss, a district court may not consider evidence outside of the pleadings. *See U.S. v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). One exception to that general rule is when a document is incorporated by reference into a complaint. *Id.* at 908. "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claims." *Id.* If that is the case, "the defendant may offer such a document,

---

[7] For the twentieth purchase order referenced in the FAC, for the August 2015 Order, NB Global does not provide a purchase order number. (*See* FAC ¶¶ 10–11.) Pini argues that NB Global did not, in fact, make an order in August 2015, because the company was not formed until October 2015. (Mot. 3 n.3.) Because the Court (1) must accept the allegations in the FAC as true for the purpose of ruling on Pini's Motion to Dismiss and (2) finds that NB Global has failed to state a claim as to the August 2015 Order on other grounds, the Court declines to address this argument. Therefore, Pini's Request for Judicial Notice as to Exhibit 20 is **DENIED**. (Req. for Judicial Notice Ex. 20, ECF No. 29-2.)

and the district court may treat such document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.*

The Court finds that the purchase orders are incorporated by reference into the FAC. NB Global lists the relevant purchase orders, on which it bases its claims, by number in the FAC. Therefore, Pini may present, and the Court may consider, those purchase orders in ruling on Pini's Motion to Dismiss. The Court **GRANTS** Pini's Request for Judicial Notice as to Exhibits 1 through 19.

**B.  Breach of Contract Claim**

Pini asserts that NB Global has failed to plead facts sufficient to support its claim that Pini breached the twenty purchase orders described in the FAC. (Mot. 11.) The Court agrees.

NB Global alleges that the parties memorialized their agreements through various purchase orders. (FAC ¶¶ 7, 10, 13, 17, 21.) NB Global does not allege that the parties' agreements consisted of anything other than the terms in the various purchase orders. As described above, the Court has taken judicial notice of the nineteen purchase orders referenced by number in the FAC. These purchase orders, however, do not contain any of the requirements NB Global alleged Pini breached. None of the purchase orders mention any labeling specifications, requirements regarding xanthan gum, fat content, or the use of certain food coloring. (Req. for Judicial Notice Exs. 1–19.) Therefore, the Court finds that NB Global has failed to state a claim for breach of contract for breach of those requirements.

Pini also argues that the purchase orders fail to specify a specific delivery time and, therefore, NB Global has not alleged a breach of contract claim for late delivery of the goods. (Mot. 3.) California law requires that "[t]he time for shipment or any other action under a contract if not . . . agreed upon shall be a reasonable time." Cal. Com. Code § 2309(1). NB Global alleges that some of Pini's shipments were delayed up to nine months and others were delayed one week to two months. (FAC ¶¶ 11, 14.)

Although the "reasonableness" of delivery time is a fact-intensive inquiry, usually not to be decided on a Motion to Dismiss, the Court finds that NB Global has not alleged sufficient facts to state a claim that the timing of the Pini's delivery was unreasonable under the circumstances surrounding the parties' various agreements. For example, NB Global does not allege that the parties' course of dealing or performance, or certain industry standards, made Pini's delivery times unreasonable. Therefore, the Court finds that NB Global has failed to state a claim for breach of contract.

## C. Notification of Defects in Pork Shipments

Pini additionally argues that NB Global's breach of contract claim is deficient because NB Global failed to allege that it notified Pini of any defects in the various shipments. (Mot. 9, 14.) NB Global responds that (1) pre-suit notice is not required for a breach of contract claim and, alternatively, (2) it adequately alleged pre-suit notice in the FAC. (Opp'n 10.) The Court disagrees with NB Global on both points.

Under the California Commercial Code, a buyer is deemed to have accepted goods when the buyer "fails to make an effective rejection" after a reasonable opportunity to inspect them. Cal. Com. Code § 2606. Where the buyer has accepted tender of the challenged goods, "[t]he buyer must, within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy." Cal. Com. Code § 2607(3)(A). The Ninth Circuit has held that California's notice provision strictly requires pre-suit notice:

> The purpose of giving notice of breach is to allow the breaching party to cure the breach and thereby avoid the necessity of litigating the matter in court. This purpose would be completely undermined if it could be satisfied with the giving of post-suit notice. For that reason, we agree with the district court . . . that the notice requirement means pre-suit notice.

*Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011) (internal citations omitted). Further, "[t]o avoid dismissal of a breach of contract or breach of warranty claim in California, 'a buyer must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovery of the breach.'" *Id.* (quoting

*Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1142 (N.D. Cal. 2010)). There can be no question that under California law, a party is required to plead that they provided pre-suit notice to adequately allege breach of contract.

Here, NB Global claims that it adequately alleged pre-suit notice of Pini's breach due to mislabeling of certain products, because paragraph 15 of the FAC provides that "[NB Global] had to arrange for correct labels" and "[Pini] sent corrected labels." (FAC ¶ 15.) NB Global argues that "Pini could not have resent the corrected labels unless NB Global notified Pini of the nonconforming goods." (Opp'n 10.) The Court declines to allow NB Global to plead its case through implication. To satisfy Rule 8, NB Global must set forth facts sufficient to allege each element of its causes of action. Paragraph 15 does not sufficiently allege pre-suit notice. Even more, that paragraph speaks only to the mislabeling defect, and not the many other defects complained of in the FAC. Therefore, for this additional reason, the Court finds that NB Global has failed to adequately plead its breach of contract claim.

## D. Breach of Covenant of Good Faith and Fair Dealing Claim

Pini argues that NB Global's claim for breach of the covenant of good faith and fair dealing should be dismissed because it is duplicative of its breach of contract claim. (Mot. 14.) A breach of the implied covenant of good faith and fair dealing involves something more than breach of the contractual duty itself. *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1394 (1990). If "the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Id.* at 1395. There are three exceptions to this rule: (1) where a breach of a consensual contract claim is not alleged, (2) where the [counter-claimant] is seeking recovery in tort, and (3) where the [counter-claimant] alleges that the defendant acted in bad faith to frustrate the contract's benefits.

*Celador Int'l Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 852 (C.D. Cal. 2004) (citations omitted).

> NB Global alleges that Pini:
>> breached the covenant of good faith and fair dealing by engaging in the following conduct, including, but not limited to: completely failing to provide the pork products in a timely manner, by providing products that did not conform to the standards and specifications agreed upon, and by failing to label or correctly label the pork products.

(FAC ¶ 33.) This is precisely the alleged conduct that NB Global relies upon for its breach of contract claim. Additionally, none of the three recognized exceptions apply: (1) NB Global is alleging a breach of contract claim, (2) it is not seeking recovery in tort, and (3) it has not alleged that Pini acted in bad faith. Therefore, the Court finds that NB Global's claim for breach of covenant of good faith and fair dealing is duplicative of its claim for breach of contract and must be dismissed.

### E. Breach of Implied Warranty of Merchantability Claim

Pini argues that NB Global's claim for breach of implied warranty of merchantability claim fails because NB Global has not alleged that Pini's products were not fit for ordinary use. (Mot. 16–17.) To state a claim for breach of implied warranty of merchantability, a party must plead facts sufficient to show that "the product did not possess even the most basic degree of fitness for ordinary use." *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 406 (2003). Alternatively, a party may base such a claim on a tendered product that does not conform to affirmative representations made by the seller. *Zakaria v. Gerber Prods. Co.*, No. LA CV15-00200-JAK-E, 2015 WL 3827654, at *11 (C.D. Cal. June 18, 2015) (citing Cal. Com. Code § 2314(2)(f)).

In the section dedicated to this cause of action in the FAC, NB Global alleges that Pini breached the implied warranty of merchantability by providing pork chops containing xanthan gum and sancocho that did not meet the required specifications. (FAC ¶¶ 41–42.) NB Global does not allege whether the tendered pork chops or

sancocho were unfit for ordinary use, nor does it provide facts sufficient to establish that Pini made an affirmative representation as to the supposed "specifications." As explained above, the Court finds that the purchase orders do not contain any such specifications.

NB Global does not respond to Pini's arguments concerning the sancocho or pork chops containing xanthan gum. NB Global's only response in support of its claim for breach of implied warranty of merchantability is that it has sufficiently pled a breach as a result of the presence of listeria in some of Pini's pork chops. (*See* Opp'n 15.) The listeria claims, however, are not mentioned in the section of the FAC dedicated to merchantability. Instead, NB Global asks the Court to consider the facts alleged in the breach-of-contract section as incorporated by reference in the later section on merchantability. (*Id.*) While incorporation by reference is permitted under Federal Rule of Civil Procedure 10(c), the Court will not allow NB Global to rely on facts for its merchantability claim that are not mentioned at all in the relevant section of the FAC. Allowing such pleading would not provide Pini with "fair notice of what [NB Global's] claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *see also Saunders v. Saunders*, No. CV 1-05-0699-RCC, 2009 WL 382922, at *2 (E.D. Cal. Feb. 13, 2009) ("A complaint having the factual elements of a cause of action scattered throughout the complaint and not organized into a 'short and plain statement of the claim' may be dismissed for failure to satisfy Rule 8(a).").

Additionally, NB Global's claim fails because it has not sufficiently alleged how the presence of listeria renders uncooked pork "unfit for ordinary use." NB Global alleges only that Pini "provided pork chops that tested positive for listeria," without any explanation as to why or how that made the pork unfit. (FAC ¶ 16.) Pini argues, for example, that there is no requirement that raw meat be tested for listeria because proper cooking destroys the bacteria. (Mot. 17); *see also* 9 C.F.R. § 430.4 (requiring testing and controls for listeria only in ready-to-eat pork products). While

the Court declines to decide now whether the presence of listeria in uncooked pork would or would not render to product unfit, it is clear from the face of the FAC that NB Global has not connected the dots as to why listeria makes the pork chops it ordered unsafe or unsellable. Nor has NB Global alleged that Pini made any affirmative representations regarding the presence of listeria, or lack thereof, in its products. For these reasons, the Court finds that NB Global has failed to state a claim for breach of implied warranty of merchantability.

### F. Breach of Implied Warranty of Fitness for Particular Purpose Claim

Pini argues that NB Global has failed to state a claim for breach of implied warranty of fitness for a particular purpose, because NB Global's asserted use, to re-sell the food items to stores, was an ordinary, not particular, purpose. (Mot. 17.) NB Global responds that its stated purpose of distributing the meat products is a sufficiently particular purpose. (Opp'n 16.) The Court disagrees.

The warranty of fitness for a particular purpose is implied by law when "a seller has reason to know that a buyer wishes goods for a particular purpose and is relying on the seller's skill and judgment to furnish those goods." *Martinez v. Metabolife Int'l, Inc.*, 113 Cal. App. 4th 181, 189 (2003). This warranty is breached when the goods are not reasonably fit for the intended purpose, causing injury. *Id.* The crux of the issue here is whether NB Global purchased pork products from Pini for a "particular purpose" such that it relied on Pini's skill. Comment 2 to the relevant California statutory provision states:

> A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

Cal. Com. Code § 2315, cmt. 2.

NB Global alleges that, at the time of purchase, Pini "knew or had reason to know that [NG Global] intended to obtain fresh and 'up-to-specifications' pork products in order for [NB Global] to stock the shelves of its national retail store customers." (FAC ¶ 49.) The Court finds that NB Global has inadequately pled this cause of action. Meat products are ordinarily sold and used for human consumption, and NB Global's status as a distributor in the supply chain does not mean that its purpose is "particular." *See NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023 (E.D. Cal. 2013) (finding that plaintiff failed to state a claim against egg seller because repackaging and distributing unbroken shell eggs was not "peculiar to the nature" of plaintiff's business). Additionally, as explained above, NB Global has not sufficiently alleged how Pini breached "specifications" that were not contained in the various purchase orders. Therefore, the Court **GRANTS** Pini's Motion to Dismiss as to NB Global's claim for implied warranty of fitness for a particular purpose.

## G. Unfair Business Practices Claim

In the section of the FAC dedicated to NB Global's claim of Unfair Business Practices, NB Global alleges merely that Pini violated section 17200 of the California Business and Professions Code by performing "the many wrongful actions described herein." (FAC ¶ 59.) Pini argues that because NB Global's other allegations fail, this one must necessarily fail as well. (Mot. 19.)

California's Unfair Competition Law, Business & Professions Code § 17200, provides relief for "unfair competition," which is defined as "any unlawful, unfair, or fraudulent act or practice and unfair, deceptive, untrue or misleading advertising." *McVicar v. Goodman Global, Inc.*, 1 F. Supp. 3d 1044, 1049–50 (C.D. Cal. 2014) (citing Cal. Bus. & Prof. Code § 17200). NB Global claims that Pini violated California's Uniform Commercial Code when (1) Pini did not deliver the goods in a timely manner; (2) Pini did not tender goods that were up-to-specifications; (3) certain

orders contained xanthan gum or listeria; and (4) labels were not up-to-code per USDA standards for public safety. (Opp'n 18.)

First, the Court finds that NB Global fails to state a claim for unfair business practices, because it has failed to provide a "short and plain statement of the claim." *Saunders v. Saunders*, 2009 WL 382922, at *2. Instead, NB Global relies solely on its reference to "the many wrongful actions described" in other sections of the FAC. This is not sufficient to provide Pini notice of the claim. Second, the Court has already found that NB Global has not adequately alleged that the tendered products did not comply with various "specifications" or were unfit for consumption. Lastly, NB Global has not alleged that Pini's supposed failure to label the products in conformance with USDA standards was unlawful. Therefore, the Court finds that NB Global has failed to state a claim for unfair business practices.

**H.    Leave to Amend**

As a general rule, a court should freely give leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a). But a court may deny leave to amend when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

Because NB Global could potentially amend the FAC in a way to correct the deficiencies identified in this Order, the Court allows NB Global leave to amend.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Pini's Motion to Dismiss NB Global's FAC. NB Global is permitted leave to amend. If NB Global wishes to amend the FAC, it must do so no later than **November 21, 2017**.

**IT IS SO ORDERED.**

October 31, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**